2022 IL App (1st) 210153-U
No. 1-21-0153
Order filed December 30, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| IN RE ESTATE OF ARTHUR DELANEY, JR. | ) Appeal from the Circuit Court |
| | ) of Cook County, Illinois |
| Deceased. | ) |
| _____ | ) |
| KAREN WARD, | ) |
| Petitioner-Appellant, | ) |
| | ) |
| | ) No. 18 P 6716 |
| v. | ) |
| | ) |
| | ) The Honorable |
| THE ESTATE OF ARTHUR DELANEY, JR., *et. al.* | ) Kent A. Delgado, |
| | ) Judge Presiding. |
| Respondents-Appellee | ) |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Oden Johnson and Tailor concurred in the judgment.

**ORDER**

*Held:* The circuit court's finding that claimant did not demonstrate decedent made some direct expression of an intent to adopt claimant was not against the manifest weight of the evidence, and the court properly denied claimant's petition to amend the heirship order where there was no equitable adoption.

¶ 1    Karen Ward filed a petition in the probate division of the circuit court asking to name her as an heir of her stepfather, Arthur Delaney, Jr. The circuit court denied the petition, finding that

Karen failed to prove Arthur intended to adopt her. Because the finding is not contrary to the manifest weight of the evidence, we affirm the circuit court's judgment.

¶ 2                                    BACKGROUND

¶ 3    Arthur died intestate on March 4, 2017. The circuit court issued letters of administration to Louis Apostol, Cook County Public Administrator, in October 2018. Apostol identified Arthur's cause of action against Glenbridge Nursing Home as the estate's sole asset.

¶ 4    Karen filed a petition asking the court to name her as Arthur's heir under the doctrine of equitable adoption. The circuit court held an evidentiary hearing on the petition. Karen testified that in 1974, when she was 10, Arthur began courting Karen's mother, Myrtle. Myrtle married Arthur in 1978, and Karen, Arthur, and Myrtle lived together as a family until 1985, when Karen, then 20, moved into her own home. Karen continued to treat Arthur as her father, and Arthur continued to treat Karen as his daughter.

¶ 5    Karen testified that she visited Arthur regularly through the years, and after Myrtle died Karen took responsibility for helping Arthur take care of himself. When asked about Arthur's other children, the following exchange occurred:

"Q. And did Arthur have any other children?

A. I never met – my dad had a son from what I heard. I never met him. He never came around. So, I know he was seeing a woman before he married my mom. So, I don't know if that was her son prior to that, but I never met him. He never came around.

Q. And you don't know his whereabouts today or his name?

A. As a matter of fact, I even tried to get on – once I got older, but dad never even talked about him. When I tried to, you know, as I got a little older get information about him, he never – he was like my number—O had the number for 30 years. My number is the same. He knew how to reach out to me.

\*\*\*

So, it wasn't just—I don't know what was that. So, I don't know. Truly, I guess, back then they weren't doing DNA tests. But, you know, I never met him, he never came around."

¶ 6    In 2015, Arthur signed a power of attorney giving Karen authority to make medical and financial decisions on his behalf. Karen filed Arthur's complaint against Glenbridge to help him get compensation for the mistreatment he endured there. Documents admitted into evidence showed that Arthur's estate and Glenbridge reached a settlement under which the estate will receive about $245,000.

¶ 7    Several witnesses at the hearing confirmed that Arthur treated Karen as his daughter in a loving family relationship. Geneva Boags and Moses Smith both testified they had known Karen since 2005. Boags and Smith both witnessed the signing of the power of attorney in 2015. Boags stated she met Arthur several times but never had any one-on-one conversations with him. Boags further testified that she heard Arthur refer to Karen as his daughter.

¶ 8    Donita Lake testified she had known Karen for over 25 years. Lake testified she did not know Arthur was not Karen's biological father until 2015. When speaking about Karen and Arthur's relationship, Lake stated:

"Well, from my perception of things, I must say that I had assumed that Mr. Delaney was her father. I thought that was her biological father based on what I observed in terms of how they interacted with each other, her conversation regarding him and her mom. I just assumed that was her dad."

¶ 9    Ralph Garcia testified that he first met Arthur in 1979 or 1980. Arthur introduced Garcia to Karen as his daughter. He further testified that Arthur often referred to Karen as his daughter when he visited Arthur's home and that he was unaware of Arthur's other child. None of the witnesses remembered any mention of adoption. Karen admitted Arthur did not adopt her. In her words, "It never was a conversation."

¶ 10    The circuit court found Karen and her witnesses credible and found she proved that she and Arthur had a loving father-daughter relationship. However, the court held that binding precedent required proof that Arthur intended to adopt Karen, and she failed to prove an intent to adopt. The court denied the petition to name her as Arthur's heir. Karen now appeals.

¶ 11                                ANALYSIS

¶ 12    On appeal, Karen argues she sufficiently met the requirements for equitable adoption. Additionally, Karen argues she should be considered an heir under the theory of an implied contract to adopt. We review the circuit court's findings of fact under a manifest weight of the evidence standard. *In re Estate of K.E.S.,* 347 Ill. App. 3d 452, 461 (2004). We review de novo the legal issue of whether the facts show an equitable adoption. *Id.*

¶ 13    Our supreme court set standards for proof of equitable adoption in *DeHart v. DeHart*, 2013 IL 114137. The court stated:

"We do not believe it sufficient merely to prove that a familial relationship existed between the decedent and the plaintiff. Nor do we deem it sufficient *** that the plaintiff merely demonstrated that from an age of tender years, [s]he held a position exactly equivalent to a statutorily adopted child. Rather, we hold that a plaintiff bringing an equitable adoption claim must prove an intent to adopt *** and, additionally, must show that the decedent acted consistently with that intent by forming with the plaintiff a close and enduring familial relationship.

***

*** [W]e find that a plaintiff must prove an equitable adoption claim to recover against an estate by clear and convincing evidence. Moreover, the decedent's intent to adopt and form a close and enduring familial relationship must be clear and conclusive." *DeHart*, 2013 IL 114137, ¶¶ 59-65.

¶ 14   Similar to the plaintiff in *Dehart*, Karen relies on the supreme court's decision in *Monahan v. Monahan*, 14 Ill.2d 449, 153 N.E.2d 1 (1958). In *Monahan*, the plaintiff's natural mother placed him with the Monahans when he was two years old, and his father abandoned him a year later. Evidence from Mrs. Monahan's personal effects demonstrated that plaintiff's birth mother consented to his adoption. The Monahans raised plaintiff as their own, plaintiff was baptized with the Monahan name, and the Monahans consulted an attorney about adopting plaintiff. Plaintiff was never adopted because the Monahans believed they needed the natural father's consent but were unable to find him. The court found that the evidence of a contract as well as the intention to adopt the plaintiff was "clear and convincing" based on the presented evidence. *Id.* at 453. The court

further noted that "a contract to adopt, as any other fact, may be proved by circumstantial evidence, provided that evidence meets the requisite tests of sufficiency." *Id.*

¶ 15    The *DeHart* court distinguished between the "contract to adopt" and "equitable adoption" theory. The court found "the concept of 'equitable adoption' is somewhat murky because many states seem to equate the theory of equitable adoption with a contract-to-adopt theory" by applying "estoppel or quasi-contract considerations where there has been clear proof of a contract, expressed or implied, reliance upon the parent-child relationship, and performance of obligations under the *de facto* relationship." *DeHart*, 2013 IL 114137, ¶ 52. As a result, the court held that an equitable adoption could occur without the requirement of a contract to adopt. *Id* ¶ 59.

¶ 16    Unlike the plaintiff in *Monahans*, Karen has not presented enough circumstantial evidence to demonstrate an implied contract to adopt. Karen presented credible evidence that convinced the circuit court she had a loving familial relationship with Arthur, but Karen presented no evidence that Arthur ever expressed an intent to adopt her.[1]

¶ 17    The circuit court's finding that Karen did not show by clear and convincing evidence that Arthur intended to adopt her is not contrary to the manifest weight of the evidence. Hence, there was no equitable adoption or contract to adopt. Accordingly, we affirm the circuit court's judgment.

¶ 18                                    CONCLUSION

¶ 19    Karen showed that she had a loving father-daughter relationship with Arthur for most of her life, but she admitted Arthur never discussed adoption with her. Under *DeHart*, Karen's

---

[1] Karen's brief includes the following statement: "Arthur Delaney indicated that he wanted to adopt Karen McGrady, but William McGrady [Karen's biological father] repeated indicated to Arthur Delaney that William would not permit such an adoption." Karen's brief does not cite to any document or testimony in the record to support the statement.

evidence did not suffice for a claim of equitable adoption. Accordingly, we affirm the circuit court's judgment.

¶ 20    Affirmed.